## IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| DIANNA MOORE, PAMELA DENNISON, ANNA LANGLEY, JOHN BECK, and KEVIN GOSS, | ) ) ) ) |
| Plaintiffs, | ) ) |
| vs. | ) ) ) |
| JOHNSON & JOHNSON, ORTHO-MCNEIL PHARMACEUTICAL, INC., JOHNSON & JOHNSON PHARMACEUTICAL RESEARCH & DEVELOPMENT, LLC, and WALGREEN CO. d/b/a Walgreens, | ) ) ) ) ) ) ) |
| Defendants. | ) |

CIVIL NO. 09-854-GPM

## <u>MEMORANDUM AND ORDER</u>

**MURPHY, District Judge:**

### I. Introduction

This matter is before the Court on the motion for remand brought by Plaintiffs Dianna Moore, Pamela Dennison, Anna Langley, John Beck, and Kevin Goss (Doc. 10). Moore, Dennison, Langley, Beck, and Goss assert claims against Defendants Johnson & Johnson ("J & J"), Ortho-Mcneil Pharmaceutical, Inc. ("Ortho-McNeil"), Johnson & Johnson Pharmaceutical Research & Development, LLC ("J & J Pharmaceutical"), and Walgreen Co. ("Walgreens") arising from personal injuries Plaintiffs allegedly suffered as a result of using Levaquin, a prescription medication that is manufactured by J & J, Ortho-McNeil, and J & J Pharmaceutical and distributed by Walgreens. The complaint in this case asserts claims for strict products liability, negligence, breach of implied and express warranties, fraud, violations of the Illinois Consumer Fraud and

Deceptive Business Practices Act, 815 ILCS 505/1 *et seq.*, and unjust enrichment against J & J, Ortho-McNeil, and J & J Pharmaceutical. The complaint also asserts separate counts for breach of express and implied warranties, strict products liability, and negligence against Walgreens. This case was filed originally in the Circuit Court of the Third Judicial Circuit, Madison County, Illinois, and has been removed from state court to this Court by J & J, Ortho-McNeil, and J & J Pharmaceutical on the basis of federal diversity jurisdiction. Plaintiffs in turn have moved for remand of this case to state court for want of federal subject matter jurisdiction. Although J & J, Ortho-McNeil, and J & J Pharmaceutical have not yet filed a response to Plaintiffs' motion for remand, the Court has reviewed carefully the motion, the notice of removal, and the record of the case and concludes that a response by the removing Defendants is unnecessary to the correct resolution of the motion. Accordingly, the Court now rules as follows.

## II. ANALYSIS

As noted, the basis for federal subject matter jurisdiction asserted in this case is federal diversity jurisdiction, which requires, of course, that there be complete diversity of citizenship among the parties, that is, no plaintiff may be a citizen of the same state as any defendant, and that an amount in excess of $75,000, exclusive of interest and costs, be in controversy. *See* 28 U.S.C. § 1332(a)(1); *Starno v. Bayer Corp.*, Civil No. 09-821-GPM, 2009 WL 3257124, at *1 (S.D. Ill. Oct. 7, 2009); *Brown v. Bayer Corp.*, Civil No. 09-760-GPM, 2009 WL 3152881, at *2 (S.D. Ill. Sept. 28, 2009); *Cassens v. Cassens*, 430 F. Supp. 2d 830, 832-33 (S.D. Ill. 2006). J & J, Ortho-McNeil, and J & J Pharmaceutical, as the removing Defendants, bear the burden of proof as to the existence of federal subject matter jurisdiction in this case. *See Meridian Sec. Ins. Co. v. Sadowski*, 441 F.3d 536, 540 (7th Cir. 2006) (citing *McNutt v. General*

*Motors Acceptance Corp. of Ind.*, 298 U.S. 178, 189 (1936)); *Fuller v. BNSF Ry. Co.*, 472 F. Supp. 2d 1088, 1091 (S.D. Ill. 2007); *Littleton v. Shelter Ins. Co.*, No. 99-912-GPM, 2000 WL 356408, at *1 (S.D. Ill. Mar.9, 2000).  The removal statutes are construed narrowly, and doubts about the propriety of removal are resolved in favor of remand.  *See Doe v. Allied-Signal, Inc.*, 985 F.2d 908, 911 (7th Cir. 1993); *Bancroft v. Bayer Corp.*, Civil No. 09-787-GPM, 2009 WL 3156706, at *1 (S.D. Ill. Sept. 29, 2009); *Bourda v. Caliber Auto Transfer of St. Louis, Inc.*, Civil No. 09-519-GPM, 2009 WL 2356141, at *2 (S.D. Ill. July 31, 2009).

In this instance it appears from the nature of the injuries alleged that Plaintiffs' claims each exceed the jurisdictional minimum amount of $75,000, exclusive of interest and costs, given that Plaintiffs all plead for damages in excess of $50,000 and allege very severe permanent bodily injuries as a result of using Levaquin.  *See Andrews v. E.I. Du Pont De Nemours & Co.*, 447 F.3d 510, 514-15 (7th Cir. 2006); *Rising-Moore v. Red Roof Inns, Inc.*, 435 F.3d 813, 815 (7th Cir. 2006); *Chase v. Shop 'N Save Warehouse Foods, Inc.*, 110 F.3d 424, 428-29 (7th Cir. 1997); *Ford v. Keck*, No. 06-cv-667-DRH, 2007 WL 1022003, at *2 (S.D. Ill. Apr. 2, 2007); *Yount v. Shashek*, 472 F. Supp. 2d 1055, 1066 (S.D. Ill. 2006); *Fields v. Jay Henges Enters., Inc.*, Civil No. 06-323- GPM, 2006 WL 1875457, at **3-5 (S.D. Ill. June 30, 2006); *McCoy v. General Motors Corp.*, 226 F. Supp. 2d 939, 941-43 (N.D. Ill. 2002).  However, diversity of citizenship is not complete.  Moore, Dennison, Langley, Beck, and Goss are citizens of Illinois, *see O'Neill v. Pointer*, Civil No. 09-704-GPM, 2009 WL 3156687, at *1 (S.D. Ill. Sept. 25, 2009); *Willis v. Greenpoint Mortgage Funding, Inc.*, Civil No. 09-593-GPM, 2009 WL 2475285, at *1 (S.D. Ill. Aug. 11, 2009); *Ball v. Ball*, Civil No. 09-405-GPM, 2009 WL 1515299, at *1 (S.D. Ill. June 1, 2009), as is Walgreens, which is a corporation organized under the law of Illinois with its principal place of business in

Illinois.  *See* 28 U.S.C. § 1332(c)(1); *Lyerla v. Amco Ins. Co.*, 461 F. Supp. 2d 834, 836 (S.D. Ill. 2006).[1]

The removing Defendants contend that the Court can exercise jurisdiction in diversity because Walgreens has been fraudulently joined to defeat diversity jurisdiction.  In evaluating diversity of citizenship, a court must disregard a defendant that has been fraudulently joined.  *See Schwartz v. State Farm Mut. Auto. Ins. Co.*, 174 F.3d 875, 878 (7th Cir. 1999); *LaRoe v. Cassens & Sons, Inc.*, 472 F. Supp. 2d 1041, 1045 (S.D. Ill. 2006).  A defendant is fraudulently joined when "there is no possibility that a plaintiff can state a cause of action against [the] nondiverse defendant[ ] in state court, or where there has been outright fraud in plaintiff's pleading of jurisdictional facts."  *Gottlieb v. Westin Hotel Co.*, 990 F.2d 323, 327 (7th Cir. 1993).  *See also Hoosier Energy Rural Elec. Coop., Inc. v. Amoco Tax Leasing IV Corp.*, 34 F.3d 1310, 1315 (7th Cir. 1994); *Smith v. Merck & Co.*, 472 F. Supp. 2d 1096, 1098 (S.D. Ill. 2007).  A defendant seeking removal based on alleged fraudulent joinder has the "heavy" burden of proving that, after the court resolves all issues of law and fact in the plaintiff's favor, there is no possibility that the plaintiff can establish a cause of action against the diversity-defeating defendant in a state court.  *Poulos v. Naas Foods, Inc.*, 959 F.2d 69, 73 (7th Cir. 1992).  *See also Asperger v. Shop Vac Corp.*, 524 F. Supp. 2d 1088, 1092 (S.D. Ill. 2007); *Bova v. U.S. Bank, N.A.*, 446 F. Supp. 2d 926, 930 (S.D. Ill. 2006); *Hauck v. ConocoPhillips Co.*, Civil No. 06-135-GPM, 2006 WL 1596826, at *2

---

1.    The citizenship of the other parties to this case for diversity purposes is as follows:  J & J is a corporate citizen of New Jersey; Ortho-McNeil is a corporate citizen of Pennsylvania and New Jersey; and J & J Pharmaceutical is a limited liability company of which, according to the allegations of the notice of removal in this case, the sole member is a Pennsylvania citizen, so that J & J Pharmaceutical is a Pennsylvania citizen.  *See B & R Oil Co. v. Imperial Enters. of Ill., LLC*, Civil No. 09-257-GPM, 2009 WL 1867677, at *1 & n.1 (S.D. Ill. June 29, 2009); *LaRoe v. Cassens & Sons, Inc.*, 472 F. Supp. 2d 1039, 1040 (S.D. Ill. 2006).

(S.D. Ill. June 6, 2006).  Here the removing Defendants do not allege fraud in Plaintiffs' pleading of jurisdictional facts against Walgreens and instead allege that Plaintiffs cannot establish a cause of action against Walgreens in state court for two reasons:  Plaintiffs' claims for strict products liability and negligence against Walgreens are barred by the "learned intermediary" doctrine; and Walgreens cannot be liable for breach of warranty because a sale of prescription medication is not a sale of "goods" within the meaning of the Illinois Uniform Commercial Code ("Illinois UCC"). The Court addresses each of these contentions in turn.

The Court turns first to the question of whether Plaintiffs' claims against Walgreens based on strict products liability and negligence are barred by the learned intermediary doctrine. As adopted in Illinois in *Kirk v. Michael Reese Hospital & Medical Center*, 513 N.E.2d 387 (Ill. 1987), the learned intermediary doctrine provides generally that, "where prescription drugs are concerned, the manufacturer's duty to warn is limited to an obligation to advise the prescribing physician of any potential dangers that may result from the drug's use.  This special standard for prescription drugs is an . . . exception to the . . . general rule that one who markets goods must warn foreseeable ultimate users of dangers inherent in his products."  *Id*. at 392 (emphasis omitted). "Prescription drugs are likely to be complex medicines, esoteric in formula and varied in effect.  As a medical expert, the prescribing physician can take into account the propensities of the drug as well as the susceptibilities of his patient.  His is the task of weighing the benefits of any medication against its potential dangers.  The choice he makes is an informed one, and individualized medical judgment bottomed on a knowledge of both patient and palliative."  *Id*.  "Pharmaceutical companies then, who must warn ultimate purchasers of dangers inherent in patent drugs sold over the counter, in selling prescription drugs are required to warn only the prescribing physician, who acts as a

'learned intermediary' between manufacturer and consumer." *Id. See also Fakhouri v. Taylor*, 618 N.E.2d 518, 520 (Ill. App. Ct. 1993); *Eldridge v. Eli Lilly & Co.*, 485 N.E.2d 551, 552-53 (Ill. App. Ct. 1985). Although originally a judicially crafted limitation on the scope of the doctrine of strict products liability in tort, Illinois courts have extended the learned intermediary doctrine to claims of negligence as well as strict products liability. *See Leesley v. West*, 518 N.E.2d 758, 760-61 (Ill. App. Ct. 1988).

The Court finds unpersuasive the removing Defendants' claim of fraudulent joinder based upon the learned intermediary doctrine. In the first place, the question of whether a physician has been adequately warned by the manufacturer of a drug of the drug's dangerous propensities is, as with any issue related to the adequacy of warnings, one of fact. *See Hansen v. Baxter Healthcare Corp.*, 764 N.E.2d 35, 43 (Ill. 2002); *Proctor v. Davis*, 682 N.E.2d 1203, 1215 (Ill. App. Ct. 1997); *Mahr v. G.D. Searle & Co.*, 390 N.E.2d 1214, 1230 (Ill. App. Ct. 1979). *See also Noyola v. Johnson & Johnson*, No. 85 C 2184, 1986 WL 14657, at *2 (N.D. Ill. Dec. 16, 1986) ("[U]nder Illinois law, the adequacy of warnings is ordinarily a question of fact[.]"). Fact-finding, however, is outside the Court's purview in evaluating a claim of fraudulent joinder to defeat diversity jurisdiction. As the United States Court of Appeals for the Seventh Circuit suggested recently, the standard under which a claim of fraudulent joinder is considered may be "even more favorable to the plaintiff than the standard that applies to a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6)." *Schur v. L.A. Weight Loss Ctrs., Inc.*, 577 F.3d 752, 764 (7th Cir. 2009) (citing *Rutherford v. Merck & Co.*, 428 F. Supp. 2d 842, 847 (S.D. Ill. 2006)). In evaluating fraudulent joinder, a court's inquiry is restricted to the pleadings and, as noted, all questions of law and fact are resolved in favor of remand, save in a narrow class of cases in which evidence outside the

pleadings establishes incontrovertibly that a diversity-defeating defendant has no connection to a controversy. *See Wilson v. Republic Iron & Steel Co.*, 257 U.S. 92, 94-98 (1921) (holding that a case was properly removed to federal court where the plaintiff failed to controvert allegations in a verified removal petition that a non-diverse defendant was not present when the plaintiff's injuries were received, and did no act or deed which caused or contributed to such injuries); *Wecker v. National Enameling & Stamping Co.*, 204 U.S. 176, 183-86 (1907) (finding fraudulent joinder where a diversity-defeating defendant was merely a draftsman with no responsibility for designing the machine alleged to have caused the plaintiff's injury); *Faucett v. Ingersoll-Rand Mining & Mach. Co.*, 960 F.2d 653, 654-55 (7th Cir. 1992) (in an action for strict products liability, fraudulent joinder was established by a diversity-defeating defendant's uncontradicted affidavit stating that he had nothing to do with the machine at issue); *Veugeler v. General Motors Corp.*, No. 96 C 7278, 1997 WL 160749, at *3 (N.D. Ill. Apr. 2, 1997) (fraudulent joinder was established by uncontradicted affidavits attesting that a non-diverse defendant never manufactured allegedly defective airbags). Obviously this is not a case in which it is proper for the Court to undertake even a limited factual inquiry, as the removing Defendants do not aver, for example, that they never manufactured Levaquin, never marketed it in Illinois, and so forth. *See Chesapeake & Ohio Ry. Co. v. Cockrell*, 232 U.S. 146, 153-54 (1914) (in a suit against a railroad and two non-diverse employees of the railroad arising from an accident in which a pedestrian was killed by a train at a railroad crossing, holding that the railroad failed to show that its employees were fraudulently joined where the railroad produced no evidence that the employees were not operating the train at the time of the accident). Given the factual nature of a defense based on the learned intermediary doctrine, the Court cannot find fraudulent joinder on that basis.

As a second ground for rejecting the removing Defendants' claim of fraudulent joinder based on the learned intermediary doctrine, the Court notes that the question of the applicability vel non of the doctrine in this case is one that affects not merely the liability of Walgreens but also that of J & J, Ortho-McNeil, and J & J Pharmaceutical. Under Illinois law, where the facts of a case show that the manufacturer of a prescription medication gave adequate warning of the drug's known dangerous propensities to a plaintiff's treating physician, this operates to discharge the liability of everyone in the drug's chain of distribution except the physician. In *Kirk* the Supreme Court of Illinois explained, "The doctor, functioning as a learned intermediary between the prescription drug manufacturer and the patient, decides which available drug best fits the patient's needs and chooses which facts from the various warnings should be conveyed to the patient, and the extent of disclosure is a matter of medical judgment[.]" 513 N.E.2d at 393. Under these circumstances, then, "there is no duty on the part of manufacturers of prescription drugs to directly warn patients." *Id.* In other words, "[t]he learned intermediary doctrine . . . can relieve a drug manufacturer of liability for adverse effects of its drugs . . . . An adequately informed physician acts as learned intermediary between the patient and the drug manufacturer, thus breaking the chain of liability." *Ashman v. SK & F Lab Co.*, 702 F. Supp. 1401, 1404 (N.D. Ill. 1988) (applying Illinois law). *See also Koncz v. Burroughs Wellcome Co.*, No. 92 C 5797, 1994 WL 178320, at *3 (N.D. Ill. May 9, 1994) (applying Illinois law) ("The gist of the learned intermediary doctrine is that when informed physicians make decisions to prescribe drugs to their patients, they break the chain of liability."). Once a manufacturer has given adequate warning of the known dangerous propensities of a prescription drug to a physician, then the physician's decision to prescribe the drug becomes an issue of his or her reasonable exercise of professional judgment. *See AMF, Inc. v. Victor J. Andrew High Sch.*, 526

N.E.2d 584, 588 (Ill. App. Ct. 1988) ("Critical to imposing liability on physicians who prescribe drugs is their failure to communicate warnings to their patients which the manufacturer communicated to them."). In short, the learned intermediary doctrine is potentially a shield against Plaintiffs' claims based upon strict products liability and negligence for J & J, Ortho-McNeil, and J & J Pharmaceutical as well as for Walgreens. However, the doctrine of fraudulent joinder is concerned with flaws in a cause of action that are specific to a diversity-defeating party, not with defenses that show merely that "the plaintiff's case [is] ill founded as to all the defendants," whether diverse or non-diverse. *Cockrell*, 232 U.S. at 153. A claim of fraudulent joinder based on grounds that implicate the liability of both diverse and non-diverse defendants alike "manifestly [goes] to the merits of the action as an entirety, and not to the joinder[.]" *Id. See also Illinois Cent. R.R. Co. v. Sheegog*, 215 U.S. 308, 316-19 (1909) (rejecting a claim of fraudulent joinder that was tantamount to a claim that the removing defendant had not been negligent). The Court notes that it is certainly within the power of Illinois legislators to enact a "pharmacist's exception" to strict products liability, possibly along the lines of the Illinois "seller's statute," which provides generally that, in an action for strict products liability, a non-manufacturing defendant who has not contributed to an alleged defect in a product is entitled automatically to dismissal upon proof of the identity of the manufacturer of the product. *See* 735 ILCS 5/2-621; *Cherry v. Siemans Med. Sys., Inc.*, 565 N.E.2d 215, 218-19 (Ill. App. Ct. 1990). However, the judicially-created learned intermediary doctrine is not such an exception and instead is a substantive defense on the merits that affects the liability of all of the Defendants in this case. Accordingly, the Court declines to find that Walgreens has been fraudulently joined to defeat diversity jurisdiction on the basis of the learned intermediary doctrine.

The Court turns finally to the removing Defendants' claim of fraudulent joinder with respect to Plaintiffs' allegations of breach of warranty against Walgreens. The Court concludes that J & J, Ortho-McNeil, and J & J Pharmaceutical again have failed to shoulder their heavy burden of proving that Moore, Dennison, Langley, Beck, and Goss cannot establish a cause of action against Walgreens under Illinois law. As noted, the removing Defendants contend that under Illinois law a sale of prescription medication does not constitute a sale of goods within the meaning of Article 2 of the Illinois UCC such as to sustain a claim for breach of warranty. The Court does not agree. In general, of course, Article 2 of the Illinois UCC, entitled "Sales," applies solely to "transactions" involving "goods." 810 ILCS 5/2-102; *Belleville Toyota, Inc. v. Toyota Motor Sales, U.S.A., Inc.*, 770 N.E.2d 177, 194 (Ill. 2002). *See also* 810 ILCS 5/2-105(1); *Independent Mach., Inc. v. Kuehne & Nagel, Inc.*, 867 F. Supp. 752, 764 n.13 (N.D. Ill. 1994) (applying Illinois law); *Rosen v. DePorter-Butterworth Tours, Inc.*, 379 N.E.2d 407, 409 (Ill. App. Ct. 1978). Also, where specific provisions of the Illinois UCC apply, the common law of contracts is displaced. *See* 810 ILCS 5/1-103(b); *Theo. Hamm Brewing Co. v. First Trust & Sav. Bank of Kankakee*, 242 N.E.2d 911, 914 (Ill. App. Ct. 1968). The Court finds no support in Illinois law for the proposition that a sale of a prescription drug is not a sale of goods within the meaning of Article 2 of the Illinois UCC. The case chiefly relied upon by the removing Defendants, *Brandt v. Boston Scientific Corp.*, 792 N.E.2d 296 (Ill. 2003), involved a transaction radically different from the transactions at issue in this case. Specifically, in *Brandt* the Illinois Supreme Court held that a transaction involving the sale and surgical implantation of a pubovaginal sling to treat incontinence was a transaction predominantly for medical services, not goods, and thus could not give rise to a claim for breach of the implied warranty of merchantability. *See* 792 N.E.2d at 303-04. However, in circumstances

Page 10 of 12

much more closely akin to those presented by this case, the Illinois courts have found that transactions involving prescription medications are within the scope of Article 2 of the Illinois UCC. For example, in *Berry v. G.D. Searle & Co.*, 309 N.E.2d 550 (Ill. 1974), a suit against the manufacturer of an oral contraceptive that had allegedly caused the plaintiff personal injuries, the court stated that the provisions of the Illinois UCC "clearly demonstrate the legislative intent to create a statutory cause of action for breach of implied warranty to afford consumer protection to those who sustain personal injuries resulting from product deficiencies." *Id*. at 553.  Similarly, in *Woodill v. Parke Davis & Co.*, 374 N.E.2d 683 (Ill. App. Ct. 1978), a case arising from injuries to a child allegedly caused by the administration of a prescription drug to the child's mother while she was hospitalized as an obstetrical patient, the court held that the plaintiffs stated a claim for breach of implied warranties against the manufacturer of the drug.  *See id*. at 688-89.  The Court notes that the determination about whether a transaction is one for goods under the Illinois UCC normally presents a question of fact, *see Heuerman v. B & M Constr., Inc.*, 833 N.E.2d 382, 389 (Ill. App. Ct. 2005); *Maldonado v. Creative Woodworking Concepts, Inc.*, 796 N.E.2d 662, 667 (Ill. App. Ct. 2003), and as already has been discussed the Court cannot undertake a factual inquiry in evaluating the removing Defendants' allegations of fraudulent joinder save in narrow circumstances not present in this case.  Additionally, as noted, in evaluating fraudulent joinder the Court is required to resolve disputed questions of fact and of law against removal and in favor of remand to state court.  Applying these familiar principles in this instance, the Court concludes that the removing Defendants have failed to show that there is no possibility that Moore, Dennison, Langley, Beck, and Goss can establish a cause of action for breach of warranty against Walgreens under Illinois law.

### III. Conclusion

Plaintiffs' motion to remand (Doc. 10) is **GRANTED**.  Pursuant to 28 U.S.C. § 1447(c), this case is **REMANDED** to the Circuit Court of the Third Judicial Circuit, Madison County, Illinois, for lack of federal subject matter jurisdiction.

**IT IS SO ORDERED.**

DATED:  October 19, 2009

/s/ G. Patrick Murphy
G. PATRICK MURPHY
United States District Judge